## CORBYN v. SPECIFICATION MOTOR OIL SYSTEM et al.

No. 22284.   May 8, 1934.

Gordon Stater, for plaintiff in error.

Hunt & Eagleton and James R. Eagleton, for defendants in error.

PER CURIAM. The parties to this suit will be referred to in the order in which they appeared in the trial court.

Plaintiff brought suit in the district court of Oklahoma county against the Specification Motor Oil System of Oklahoma City and one J. L. Upp, in which plaintiff sought to recover the sum of $1,100, with interest, and as incidental relief plaintiff sued out a writ of attachment and executed his at-tachment bond in the sum of $1,000. This suit involved the validity of said bond.

It should be noted that the sum sued for is $1,100. The governing statute in such cases is section 599, Okla. Stat. of 1931, which is as follows:

"Section 599. Bond—Double Amount of Plaintiff's Claim—Unnecessary Where Defendant Nonresident or Foreign Corporation or State Is Plaintiff.

"The order of attachment shall not be issued by the clerk until an undertaking on the part of the plaintiff has been executed by one or more sufficient sureties, approved by the clerk and filed in his office, in a sum not less than double the amount of the plaintiff's claim, to the effect that the plaintiff shall pay to the defendant all damages that he may sustain by reason of the attachment, including reasonable attorney's fees, if the order be wrongfully obtained; but no undertaking shall be required where the party or parties defendant are all nonresidents of the state, or a foreign corporation, or the state of Oklahoma is the party plaintiff."

In the light of the quoted statute attention is drawn to the penal conditions of the bond, which are as follows:

"Now, we, Marmaduke Corbyn, as principal and Fidelity & Deposit Company of Maryland, as surety, hereby undertake to the said defendants in the penal sum of one thousand ($1,000) dollars, being double the amount of the property in the possession of the defendants. That the plaintiff shall pay to said defendants all damages which the said defendants may sustain by reason of said attachment if the order be wrongfully obtained, including reasonable attorney fee."

During the pendency of said suit and before trial upon the main issues, on, to wit, March 16, 1931, the defendant Specification Motor Oil System of Oklahoma City filed its motion to dissolve the attachment in said cause, which had been levied upon property belonging to said defendant, on two grounds: (1) that the grounds alleged in the affidavit were untrue; (2) that no proper bond was filed as required by statute.

Thereafter said cause came on for hearing before the court on said motion to dissolve the attachment, which was heard and sustained solely upon the ground that as a matter of law the bond was not in conformity with the provisions of the statutes. Motion for new trial was heard and overruled. Thereupon the case was regularly appealed to this court.

The plaintiff makes four assignments of error in his brief, grouping them under one

head, to the effect that the court erred in dissolving the attachment issued in said cause, and following the four assignments, counsel says at page 9 of his brief:

"Therefore, the only issue here is the correctness of the ruling of the honorable trial court in dissolving the writ of attachment without affording the plaintiff an opportunity of ·amending his bond, if amendment were necessary. All assignments of error will be considered under the one argument following."

It should be noted at the outset that the record does not show any demand on the part of ·the plaintiff to amend his bond or to substitute a new bond in place of it. Therefore, the question as to whether the plaintiff should have been permitted to amend is not before this court; the only question being as to whether the court erred in dissolving the attachment because of the fact that the bond was insufficient and was not for the amount required by law.

Counsel for plaintiff contends that the failure to give statutory bond in a sum not less than double the amount of the plaintiff's claim resulted in no injury in this case, and calls attention to the fact that the amount of the bond which was executed was approximately double the appraised value of the property attached. It is further argued that damages resulting from a wrongful attachment are in their nature compensatory, covering only the value of the property or its depreciation, together with cost, expenses, attorney fees, etc. However, on that theory, counsel contends that the· bond itself was sufficient. We do not find that the authorities justify the. contentions urged by counsel. That is to say, the law does not substitute the value of the property attached in fixing the bond in place of the statutory requirement that the bond shall be double the amount of the plaintiff's claim. For this reason, we do not believe that the cited law pertaining to the damages recoverable for wrongful attachments is in point. This will be made more apparent later in this decision when discussion is made relative to the nature of the bond required and the law governing.

It is next contended on the part of the plaintiff that, under the liberal terms of amendments under our Code, the plaintiff should have been permitted to amend his bond or substitute another bond in lieu of the one which was executed. However, as pointed out heretofore, that contention is not before the court and will not be further considered.

It is not contended on the part of the plaintiff that he gave a sufficient bond as required by section 599, O. O. S. 1931 (section. 342, C. O. S. 1921), which has been quoted. What we have said substantially covers the contentions of plaintiff in support of his argument asking that this case be reversed. The statute is plain and in unambiguous terms states that no order of attachment shall issue until a bond is given in a sum not less than double the amount of plaintiff's claim.

Counsel in argument refers to a suit now pending for alleged damages in the sum of $250,000 for the alleged wrongful attachment in this case. True enough, reference to said suit is merely by way of argument, and there is no evidence in the record concerning it, but counsel uses the illustration as an argument why the court should not be technical in requiring the full statutory penalty in attachment bonds. We think that the illustration proves the wisdom of the statute. Should it be held that the appraised value of property could be used as a basis in determining the amount of the attachment bond, it is readily seen the damages might be many times more than the bond. Therefore, the Legislature wisely provided that a bond should be given in a sum not less than double the amount of the plaintiff's claim. We do not believe that the question at issue has been directly passed upon by this court. Numerous decisions · have held that, in a proper case, even though the bond did not comply with the statute, where the question was raised in the trial court, a new bond might be given, but in order to hold with the plaintiff on the record before the court it would be equivalent to setting a precedent that one might in any case give such a bond as he chose and thus determine its sufficiency without regard to the plain language of the statute. Such a precedent would result in great confusion and disastrously in many cases. Without elaborating further, we believe that the law supports the view herein expressed, namely, that the required bond under the statute must in all cases be given.

In 4 Cyc., at page 527, we find this language:

"Bond to Procure Attachment—1. Necessity of—a. In General.

"The statutes authorizing attachment usually require, as a condition to the issue of the writ, that a bond shall be given to protect defendant from the injury of a wrongful attachment. When so required it is jurisdictional and cannot be dispensed with, and it must precede the issue of the

writ, because jurisdiction does not attach until the bond is given."

To the same purport: Shinn on Attachments, section 163:

"* * * A bond being required by the statute, no jurisdiction will be obtained by the court in which the proceedings are sought to be begun, unless a complete and valid bond be executed and filed. The statement of a penalty is an essential element of a valid bond."

Further on, in the same section, the learned author elaborates on the conditions of an attachment bond as follows:

"Every statute makes this a foundation to be used in determining the amount for which the bond shall be given. Some require that the bond exceed the demand by one-half, other that it be double the amount for the recovery of which the action is brought, etc. There being little uniformity in this regard, the statute of the state in which the action is to be brought must be consulted to ascertain how to estimate the amount of the indemnity to be given in such case, and the rule it lays down must be strictly followed in the computation. For a bond in less than such amount will be utterly void."

The governing statute quoted above is explicit and mandatory, making it incumbent upon the plaintiff who asks for an attachment to execute a bond in substance and in form as required by the statute. To argue that a bond might be given in a lesser sum on the mere conception that damage might not accrue, or that the resultant damages would be inconsequential, would be merely guess-work, and, as heretofore shown, would result in utter confusion and injury in a great many instances.

For the reasons stated, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of District Judge Dennis H. Wilson, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.